It pleases the Court, Nelson Thomas, on behalf of the appellant in this matter. I would like to reserve three minutes for rebuttal, if I could. The first issue in this case is obviously jurisdiction, and we believe jurisdiction has been easily satisfied here, particularly in light of this Court's decision in the not so broad that it can be read to release the plaintiff's class claims. And there is just simply nothing in the record here that indicates that we released the class's claims here. Quite the contrary, those claims were alive and well. There was no settlement here, and because of that, there was no need for an express reservation of rights to do the appeal. This is in line with this Court's long-held view that in order to secure appellant jurisdiction, one can voluntarily dismiss the case with prejudice, and the appeal goes forward. The defendants don't contest that. Their only contest is whether there needs to be an explicit reservation. That only needs to arise in cases in which there's been some sort of release or some other indication that more than the person's individual claims are at issue. So, therefore, this Court does have jurisdiction over those claims. Roberts, can I ask one question about that before you move to the merits? So we definitely have cases in which, and let's just say we have an individual claim, there's no class action, right? So let's say the plaintiff suffers some adverse interlocutory ruling and just says, geez, you know, if I can't get that overturned, there's no point in going forward, does just what you've done here. Do we have cases that say that, but do we have cases in the context that's presented here where it's not just the individual's claim, but also, you know, the desire to pursue claims on behalf of the class? Fisherman, Your Honor, yes. Let me check on that. I believe so. I believe the Olmstead case involved class claims. It was the arbitration case, right? Yes. That was, and that was, yes, Your Honor, it was the arbitration case, and it was also a class, I believe it also involved class claims as well there. So in that case, there's that. We also have, of course, Garrity and the Supreme Court cases which involve similar issues of where the interlocutory decision on which you're seeking to appeal, as you said, is one that's important for the case. There's no reason here that you need to put an express reservation of rights in the document, particularly here where there was an e-mail exchange between the counsel in which we informed Defendant's counsel that we were going forward with the dismissal so that we could pursue the class appeal. There's no, there was no, everyone knew exactly what was going on. So this just is not one of those cases where you're releasing a whole bunch of claims and there's some issue as to whether you're really releasing the class claims as well. But so let's say that we got to the merits and we agreed with your position and we said, boy, yes, you know, this really should have gone forward as a class. So what revives your client's individual claim, since you've consented to having judgment with prejudice against you? Mind you, the only person's claims who, the only person's claims who were there when the dismissal went forward was Mr. Helms, because the other claims had been decertified and so they weren't there. There would be an interesting issue. And I don't think it's before the Court at this juncture, but there would be an interesting issue in front of the district court as to what does the reversal do. Does the reversal then reinstate Mr. Helms' claims as well, or does it just reinstate the classes and he's? But there's no one there. That's what I'm saying. That's why I asked if we have a case in which this kind of thing played out in where there's only one class representative. He is thrown in the towel, you know, suffered a dismissal with prejudice that he requested on his individual claim. Somehow that claim has to be revived if this case were going to go forward, right? Well, of course, the holdings of this Court would mean nothing if you, on the one hand, say you can do a voluntary dismissal with prejudice and appeal it to revive in Olmstead or elsewhere these other claims, and then say, oh, since you've dismissed your case with prejudice, we're not going to have a the district court case is evaporated as well. So I don't think how the mechanics of how that plays out, I've not seen this Court rule on how the mechanics of that will ultimately play out, but it would be illusory to, on the one hand, say for years and years this is the proper procedure that you're supposed to follow, and then turn around and say, but it doesn't do you any good because once you go back, you never had a case, you don't have a case anymore. And I believe here where the this Court reverses the, and again, this is, I don't think is necessary for here to be an argument from the district court, but I think if this Court reverses denial of class certification, as with any reversal, it revives the case. You wouldn't, for instance, if, you know, you can have a, any time someone is up here and their case has been thrown out and they have no case, they've been dismissed with prejudice, they're gone, and with a reversal, it brings it back to life. I would argue similarly here, it brings it back to life. There's a fallback position that, okay, it doesn't bring it back to life for him, but it brings it back to life for others. But I don't think, I think either way, I think the first one is the right answer, but I don't think it's despised, I don't think it's despised of a disappeal. And this Court has been very clear time and again, this is the proper approach. We've done what this Court has asked. We follow the precedence that's been in place for years on how to do it, which this Court has counseled on how to do it. The defendants don't argue, don't even assert that this is a problem. Their argument is we had to expressly reserve our rights. Roberts. Does it matter that you remind me on how Rule 41a works? There's, after they file an answer, you can, it either has to be with, there's some kind of a stipulation or with a court order? Correct. You went the stipulation route. Correct. But I believe, we went the stipulation route, but I believe the Court ordered it as well, I think, and I can check the record on it, but. Well, the Court just approved the stipulation. Approved the stipulation. That's what I'm saying. Does it matter that you went one route versus the other? Because I guess I could see an argument being made that, look, if you're going to go try to get a stipulation from them, then you do need to have this condition spelled out expressly, whereas if you go the court order route and it's over their objection, you can say, you know, Your Honor, I'm doing this only because you've basically tanked my case and I need to get review, and the court could then issue some order saying, okay, I recognize that and you're going to be allowed to do this. Agreed. I'd have two responses to that. First of all, they were well aware of what we were doing here. So, I mean, they, we told them we're doing this to secure appellate review, number one. Number two, I think under the precedence of this Court, including Avon, the issue that the need to reserve the right to, in the, whatever, filing or pleading or whatever you're doing, the need to reserve that right, the reason for that is because in all of those cases, you have agreed to settle everything. You're saying I'm dismissing all claims, I'm getting rid of everything. So, of course, if you're saying I'm getting rid of everything and you don't say, but I'm still appealing for class certification, you need to say I'm still appealing for class certification or you're in trouble. When you just simply say I'm dismissing with prejudice, that's, that doesn't trigger the reason to, to put that out there, because you still have those claims there and there's nothing about dismissing that implicates that you're giving up everything. And quite to the contrary, as this Court has held, if you dismiss everything, if you voluntarily dismiss, you can secure an appeal. So the point is, that's the default rule, that's the way that it goes, that's the expectation. And in Avon, she took an offer of judgment. She took an offer of judgment on everything, right? Pretty good case to say you better reserve your rights here, and she didn't. And this Court held she had a valid claim. I don't know if I mean a valid appeal and an ability to do it. And it's certainly, if in Avon, which is a release of all claims, you're still okay. Then here, we're fine. You know, I recognize your time. Maybe you should move to the next. I'm sorry. Thank you, Your Honor. In turning to the, I don't know if it's the substance or the procedure, but turning to the Rule 23 issues in this case, my overall concern with the decision of the court below pervades everything that the court below did. The decision was perfunctory, I think it is fair to say, and involved no real analysis of the issues in this case. In many points, the court was simply wrong factually about what was going on. In other cases, major issues were simply left unaddressed. This is not the sort of rigorous analysis that Dukes requires of class certification decisions. Dukes says district courts must do a rigorous analysis here. So, for instance, and that's missing here. So, for instance, when we turn to issues like community work, the court says, well, you don't have, you haven't established numerosity, even though there are 2,500 employees, seven job titles with this requirement, I can't figure out if there's numerosity. And the court below says, I can't figure out if there's numerosity because I don't know how many people actually suffered a violation. There could be some people who didn't suffer a violation. That is putting the cart before the horse. And numerosity and a class certification is not the time to come forward with affidavits to establish on a summary judgment level that you can win. If you had a case where there was a policy that said women cannot complain about sexual harassment and you have a 1,000-person company, 500 women, I don't think anybody would have problems saying that case would meet the numerosity requirements and would be certified. I mean, I agree. But I think the issue on each of the three different classes, I guess, that we're dealing with is just that you didn't establish, in the district court's view, a company-wide policy, right? Well, let's talk about the company-wide policy. I don't think that's always the case. In some cases, I think, well, let me start with the meal break, okay? I don't even know, from reading her decision, if she says we didn't establish a company-wide policy. What she says is, on our claim, some people took a half-an-hour break and some people took an hour break. And that, therefore, defeats it. Now, I don't know if that's really saying there's no company-wide policy. I think what she's talking about is going to damages. But there's no doubt there's a company-wide policy. The regional manager for California throughout the company said we will only pay people for the limited time they're interrupted during their lunch period. We will not pay for anything else. Multiple testimony on that from the defendant's own witnesses. If that is not a policy, I don't know what is. So if she says there's no evidence of a policy here, that's just wrong. The defendant says this is how we do it. So if the defendants say this is how we do it, that's a policy. If you turn to community work, she says she's not sure, you know, she says there's not, that we pointed to no evidence of a policy. We had 20 depositions saying that community work was required or encouraged, which is a legal standard. We had the 30B6 witness saying there was no instruction for the employees to record it. We had the fact it was referred to as volunteer work in the company. We had an email from a manager saying that this was supposed to be recognized in a non-monetary way. The job description said they had to do it. The company policy was to encourage all employees to be involved in the community and encouragement is what triggers their obligation to pay. Obligation managers were told to do it. Kennedy, the company says we encourage all of our employees to engage in community activities. Is it required to pay them if they do? Here is the difference. What they encouraged, I said that briefly, they encouraged people to be involved in community activities that would generate work for the company. For seven positions, it was a requirement and you had to keep track of where you went, what you did, how it brought in business for the company. If a company says to somebody you need to go up and show up at Rotary Clubs to bring in business for us, it says you need to do it. You need to find two activities. But is it required or encouraged? Why is it encouraged? The law says encouraged because the law says if you suffer or permit someone to perform work, so if you are permitting someone to perform work for you, that's to generate business for your company, then you need to pay them for it. You can't force someone to volunteer time to do something they don't want to do. No, no, that's what that's, I understand required. I don't understand encouraged. The law says encouraged, and I think part of it is to, there's a, when you're the employer and you encourage somebody to do something and you put it on their performance appraisal and you measure them on it, if you call that encouraged, I think that's pretty akin to being required to do it. But if you're the employer and you're saying we need you to go do this for, to generate business for us, and mind you, that's what they're saying. They're not like, oh, we just think being involved in the community is good. They're saying go and be involved in these organizations, put it in, and they pay them if they do it during regular business hours, but they say we won't pay you if it's outside regular business hours. Scalia, we encourage you all to join the Chamber of Commerce, the Rotary Club, and that's going to be good for the company. They have to pay them for that? Well, let me put it this way, Your Honor. You're raising a common legal issue. Maybe there, maybe we can have a dispute. There was no motion for summary judgment here. But that issue about what encouraged means and what the law is, and may I finish? Oh, certainly. Go ahead. That is a common legal issue. Maybe the answer is, no, there's no liability for encouragement. It's only required. I don't believe that's the law, but that, if such an argument exists, that should be answered for once and for all for people in this case, saying what you did was fine. It was okay. That doesn't go to class certification. It certainly shows there was a policy here, and for the district courts to say we don't point to any policy, just simply not true. I wanted to comment on this, that Judge Elston was the judge, was she not? She was. And she's a very experienced and very capable judge. Why do you think she missed the point? It's funny, because at the oral argument, she said she was going to certify the class. I mean, I can't tell you, and the transcripts are in here, you can read them. I think this came as a bolt out of the blue for the defendants as well as for us. She said, I think you've got a case here for California people. You know, it's that you can read it. So I don't know. I would say that what Judge Elston said at oral argument was correct. What happened between the oral argument and the decision, and this relatively short decision, I don't know. But what I would say is I think that her experience and her wisdom as to what she said at the oral argument made a lot more sense than what we ended up with in the written decision. Thank you. Kennedy, we'll give you a minute or two for rebuttal. Thank you, Your Honor. May it please the Court. My name is Matt Lampe. I represent the defendant, Alderwoods, in this case. Let me just start, address the comment that Mr. Thomas made about the judge saying that she was prepared to certify. I believe Mr. Thomas is confusing this case for the Bryant case. It was in the Bryant case at the oral argument that the judge said she thought she would certify a California class. She did not make that, to the best of my knowledge, that comment in this case. Let me start with the jurisdiction point. This case shouldn't even proceed past the jurisdiction point. The law in this circuit is stated in the Slavin case. And Slavin says that, in general, a party cannot appeal a judgment entered with its consent. There is an exception to that rule, and the exception is if a party specifically reserves the right to appeal. That's the law in this circuit. Now, what we have in this case is a stipulation of dismissal with prejudice. Judge Wadford had asked about that. It is very important that we draw the distinction between the stipulation with to dismiss as opposed to an order, because the stipulation required agreement over the parties. That's what Rule 41 says. And the stipulation says nothing at all about preserving rights, doesn't even hint at it. There's no suggestion of it, unlike the Evon case, where there was a pretty strong indication on the face of the settlement offer that the ---- Kennedy, you mean you were totally shocked that they appealed after the stipulated dismissal? Let me address that, and that goes to this issue of the e-mail that Mr. Thomas raised. First of all, this is an e-mail that's not in the record. It was raised by the plaintiff in their reply brief in a footnote. There's a good reason for that, because if you look at the full context of that e-mail, it actually supports our case, and it's exactly the opposite of the Evon case. In our case, what you have here were 85 named plaintiffs in this case. Class certification was denied, and they were all severed, and they scattered across the country. They all started dismissing their claims with prejudice, one right after the next. In this case, two days before the e-mail that Mr. Thomas refers to and is cited in the footnote, we said, what is your plan with respect to Mr. Helm? Mr. Thomas' co-counsel said, we're consulting with him to see what he may want to do, whether he wants to proceed. And then on the 13th of January, 2002, that e-mail came that said we would be willing to stipulate to preserve the ability to appeal the class certification decision. The next thing that's in this record is two weeks later, the parties submitted a joint case management conference statement that said the parties were discussing the terms of a stipulation of dismissal with prejudice and would let the Court know whether they could come to agreement on the terms of that stipulation or whether it would be necessary for the plaintiff to move for dismissal. And that's in the supplemental excerpt of the record at page 5. Ten days after that, the stipulation is entered. Very simple. Dismissal of the action with prejudice. No mention at all of preserving any appellate rights. Right. But that's because you guys didn't settle. I mean, the Slavin case and I think every other case you cited in your motion to dismiss involved an actual settlement, right? Your Honor, the Slavin case, the party that waived the appellate right in the Slavin case did not settle. I'm glad you raised that point. A transco was the party in Slavin that waived the right to appeal by agreeing to a final judgment in dismissal with prejudice. A transco was not part of the settlement agreement. A transco consented to the plaintiff's settlement with a co-defendant. A transco indicated that we agree to allow this judgment to be entered final as to this co-defendant and with prejudice. A transco then appealed that. And what this Court said in the transco is it was a voluntary action on a transco's part. It agreed to the dismissal with prejudice and it preserved no right. This is not the situation that Mr. Thomas is referring to where a plaintiff gets money, enters into a settlement agreement, dismisses the case with prejudice, and then tries to appeal. A transco didn't get any money at all. And so the rule in Slavin that a voluntary dismissal with prejudice bars an appeal, waives the appeal right, unless there's a preservation of appeal rights, is not limited to this context where there's a settling plaintiff. It is broader than that. And with respect to the Evon case, it was an unusual set of circumstances insofar as the dismissal entry there had – there were several drafts of it. And when I said that Evon is exactly the opposite of this case, in Evon, the defendant had proposed a settlement, an offer of judgment, that specifically and explicitly released the plaintiff's right to pursue the class claim. The plaintiff said no. The defendant then submitted a second offer of judgment that took that term out. It did not contain a term saying that the plaintiff waived appeal rights. And, in fact, it included a term saying, defendant, we reserve the right to contest whether the plaintiff can appeal. That's a pretty strong indication that the plaintiff had, indeed, preserved the right to appeal, and that the defendant – excuse me – and that the defendant had allowed for that in the – on the face of the entry. Can I ask this, just take it out of the class action context. Let's just say I've got an individual claim on the plaintiff. The judge, you know, says basically the heart of your case is rendering this evidence inadmissible. And I say, you know, what's the point of going through with the trial? I'm not going to be able to win if I can't get this evidence in. Are you saying that in that circumstance, I can't, as the plaintiff, do a Rule 41 voluntary dismissal so that I can get appellate review of that evidentiary ruling? Your Honor, we don't contest at all that the plaintiff has the ability to dismiss with prejudice in order to gain the right for appellate review. This Court's decisions make it clear that the plaintiff can do that. Okay. So why – this just seems exactly like that, except there's just the wrinkle that, yes, there's this individual claim in the class action aspect. But it seems exactly like that. They just say, I've got this tiny little claim. It's not worth me going forward with an action just so that, you know, me, Mr. Helm, can litigate it. The only thing I care about is pursuing the class, and so why not – why shouldn't we say, you know what, thanks for not making the district court go through, you know, with this wasteful effort on the individual claim, come to us, you know, you're going all in, because if we end up saying the class action was properly denied, then your case is over. I mean, you're taking that risk, but if you want to do that, go for it. Why shouldn't we say that? That's certainly a sensible route that a plaintiff could go. There's another route, which is the plaintiff just wants to end it. There's 80-some named plaintiffs in this case, in addition to the class claims, 80-some named plaintiffs. They all, or almost all of them, dismissed their claims with prejudice and did not proceed in any way, shape, or form. So it's certainly possible that the plaintiff in this case chose to go that route. The place to find out what the plaintiff's intentions are are on the face of the dismissal. Slavin says there has to be a reservation of rights. Slavin is on the books. It's a case that's available for counsel to look at, and it was a simple thing that could have been done. It would have meant we wouldn't have agreed, and the plaintiff would have had to proceed by motion. But it's very plain on the face of the dismissal entry that they did not reserve that right. Let's say that you don't agree, and you say, oh, well, if you think you're going to appeal, then we're not stipulating this. The plaintiff files the motion, but aren't you going to be in the same boat? Why would the Court say, no, I'm not going to grant your request for voluntary dismissal? There's a lot of reasons that the Court could choose to grant it or deny that motion. The Court may say, if you dismiss your individual claims with prejudice, you don't have a sufficient stake in the class claim to be a worthy representative of the class going forward. So, no, I'm not going to grant your motion. That's possible. That would need to be litigated. The plaintiff chose to go the stipulation route, and we teed up for the Court. The plaintiff, if we can't agree on terms, the plaintiff will have to move. We did reach an agreement on terms, and there was no reservation of right. It was a simple – it was very simple, Your Honor. It's in the supplemental record, and it indicates that pursuant to Federal Rule 41 by stipulation of counsel, Plaintiff William Helm hereby voluntary dismisses the above-captioned action with prejudice. And the Court – Kennedy, that's not an agreement on terms. If they're saying, yes, we agree that pursuant to the rule, you can go ahead and do it, and we don't object. Right. If there are no terms, like we're going to pay you $1,000, or from now on, you're going to be good boys, or whatever, some kind of side agreement, not just agreeing that you can file it and we won't have to oppose it. There were no terms other than that term. Yeah. There were no terms. That's not the kind of settlement. No, it wasn't a settlement, Your Honor. There was no money exchange or anything like that. Or anything. It's just a stipulation. And absent from that stipulation was any sort of a reservation of an appeal right. Mr. Thomas indicated in his brief that when he dismissed the case through that stipulation, he dismissed only individual claims and not the class claims. This exact issue came up before this Court in the Seiden case, which is cited in our brief, where Seiden looked at the language of dismissing an action, the action or an action, that word action. And Seiden says there's no ambiguity. That includes individual and class claims. So Mr. Thomas is indicating that he only intended to dismiss his individual claims. Not only does the language of the stipulation run contrary to that, the Seiden case runs contrary to that. And the longstanding rule in this circuit is interlocutory orders merge with a final judgment. So the class claims are in and the individual claims are in, and it was all dismissed with prejudice, no reservation of rights. And the background, if the Court even considers it, about the e-mail would support us as well. I'd like to turn to the merits, if I could, though, in the time remaining. Judge Hilton is a very good judge. This case had gone on for many years. There was extensive discovery. Plaintiffs had all manner of opportunity to try to justify the various theories that would support certification. Let me focus, first of all, on numerosity under the community work policy. In order to identify class members, the plaintiffs would have to have people who did community work, did it after hours, not during the work day, after hours, and were not paid for it. That's the way they define their class. That's the class definition. Judge Olson demanded, certainly understandably, that they show that there are sufficient people who fit the class definition. She didn't demand that they show a violation. Even if somebody did do community work after hours and wasn't paid, that's no violation. The issue, the merits issue, would turn on whether the company knew, should have known they were doing the work, encouraged the work versus required the work. That's just to become a class member. And there was insufficient evidence in this record to indicate that there was numerosity. There's one person. That's it in this record. After all these years of discovery, all these depositions, one. Judge Olson said there was one. In our brief, we said there's one. There's been no pushback from the plaintiff saying, no, actually, there's 40. In the Court, it would be a leap of speculation to assume that numerosity is satisfied. With respect to the various policies, and Judge Watford raised this issue, lots of opportunity to establish a policy that, under the guidance of Dukes, would serve as a basis for class verification. There's no policy at all on community work requiring that they do it, to begin with, that it be after hours and that they not be paid for it. There's no policy along those lines. And there's lots of examples in this record of individuals who did not do community work or did it during the day or did it after hours and were paid for it. There's no policy. There's no uniformity. And individual issues would predominate that inquiry. With respect to the meal break claim, there were two subclasses on the meal break claim. The first one sought premium pay for a break not granted, and the second one sought the full paid break when a break was interrupted. And it's very important to recognize the concession that the plaintiffs made with respect to this claim, and that is they conceded the first subclass in light of the Brinker case. California Supreme Court in Brinker said the employer's obligation is to relieve the employee of duty and permit the break. It has no obligation to ensure that the break is taken. So the plaintiff in this case said, in light of that holding from Brinker, we dropped the first claim, because obviously individual issues would come into play in terms of whether there was some sort of compulsion, actual, explicit, through the circumstances of the workload, customer volume, or what have you, that would have caused this person to be able to say the company did not provide the break as opposed to the employee just choosing to take the break. The exact same trigger relates to whether you have to pay the full break. It is very clear on the face of the wage order. The employer's obligation to pay the full break, this is subclass number 2, is dependent on whether it relieves the employees of duty and permits the break. And so those individual issues that Mr. Thomas has conceded would preclude certification of the first subclass would also preclude certification of the second class. If there's an interruption, in other words, an employee during the break does work, the factfinder would need to determine as a threshold matter why. Was it because the employer somehow or other coerced? Kennedy, we're running out of time. Why don't you get to your third claim? The third claim. The on-call claim? Yeah. Yeah. Once again, there's this is a classic situation illustrated in the record where there is no common policy. Alderwoods as a company has prohibited piecework pay. Always has. But this is a company that has acquired mom and pop, individually owned funeral homes all across the country. And as it acquired these homes, it realized that there's all sorts of different policies and practices and procedures that these various homes have, all different from each other, and in many instances different from Alderwoods. This piecework issue cropped up in a few places, and the company went to stop it. This is far from what Dukes requires in terms of a common company-wide, corporate-driven policy. It's exactly the opposite of it. And as a result, individual issues would predominate the liability inquiry, because there's no common thing that the jury can assess. Everyone wins or everyone loses. It's going to have to be assessed on a person-by-person basis. So thank you. With that, I submit. Thank you, counsel. I've been working my way backwards since I started on the front end. Let me turn to the meal break issue. This is probably, I think, the clearest example of reversible error in the Dukes' case. And the law in California is very clear. Unless the employee is relieved of all duty, relieved of all duty during a meal period, the meal period shall be considered on-duty meal period and counted as time worked. That's the law. In other words, if you do any work during your meal period, you're not relieved of all duty and you must pay for the meal period. Every witness from the defendants said, we don't do that. We only pay for the brief period of time that there is an interruption. We don't care that you're on duty. We don't care that you're actually physically performing work. We're only going to pay you for that narrow period. That is their absolute policy. They do not dispute it. That is just not what the law allows. And Judge Ilston, in her decision on this, her analysis constitutes three sentences if you include the conclusion that we haven't met our burden on commonality. And the reason she says that can't be certified is that some people received an hour break, some people didn't, some people received a half-an-hour break, and that – and then she sort of repeats that again about the 30-minute break. That has nothing to do with it. That is not – the law doesn't have anything to do in California with a half-an-hour break or an hour break. It has to do with if you're on duty and you're doing work, you have to pay for the whole meal period, because you're not really on break if you're constantly being interrupted or you're interrupted during it. That should be reversed. Let me just turn quickly to jurisdiction, if I may. The Slavin case involved the party on appeal signing a settlement agreement and withdrawing their objections to it. So Judge Watford, if I may sum up, it involves a settlement agreement, as Your Honor had indicated. There is no – there is a 30-day notice of – you have to file a notice of appeal within 30 days. There is no prejudice that this happened later. And we couldn't reserve our rights for our class claims. They were gone. There was nothing to reserve. They've been dismissed by the Court. Unless there's any further questions, I will submit. Thank you, counsel. Thank you.
judges: Reinhardt, Noonan, Watford